Shirley ROSE, Plaintiff–Appellant,

v.

**NEW YORK CITY BOARD OF EDUCATION, C.S.D. # 13, Defendant–Appellee.**

**Docket No. 00–7599.**

United States Court of Appeals, Second Circuit.

Argued May 16, 2001.

Decided July 16, 2001.

Edward H. Wolf, Bronx, NY, for Plaintiff-Appellant.

Julia Steiner, New York, NY, (Assistant Corporation Counsel for the City of New York, Michael D. Hess, Corporation Counsel, Barry P. Schwartz of counsel), for Defendant-Appellee.

Before: FEINBERG, VAN GRAAFEILAND and SOTOMAYOR, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Shirley Rose appeals from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson Jr., Judge). Following trial, the jury returned a verdict for defendant New York City Board of Education, Community School District # 13 ("Board") on Rose's claim alleging a violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621. Because we find that the district court erred in failing to give a burden-shifting jury instruction under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), we reverse and remand for further proceedings.

## I. Background

### A. Rose's employment history

The facts pertinent to this appeal are as follows. Plaintiff Rose, a 54-year-old [1] African-American woman, has worked for the Board in various positions for over two decades. Rose began her career with the Board as a special education teacher at P.S. 184. She taught for two years at P.S. 184 until the program was dissolved. She then transferred to School District # 27 where she taught emotionally disturbed sixth grade boys for three years. In both capacities, Rose consistently received satisfactory job performance ratings.

After serving for five years as a classroom teacher, Rose was promoted to assistant principal of P.S. 9. She worked there for two years, again receiving satisfactory performance evaluations. At the end of her second year, Rose's position at P.S. 9 was eliminated due to a decline in the student population. For the next few years, Rose "floated" in district 27. Dur-

---

1. In her brief, Rose states that she is 54. The parties stipulated that Rose was over 40 years old at the time of the alleged discriminatory act, and thus a member of the protected class.

ing this time, she continued to receive satisfactory ratings from her superiors.

In 1988, Rose was assigned to the assistant principal position at P.S. 305 where she also successfully performed her job duties. During Rose's third year at P.S. 305, the principal took a leave of absence due to illness and Rose was promoted to acting principal. Under Rose's leadership, the students' reading and math scores improved. When the principal returned from leave, the school superintendent promoted Rose to acting principal of another school, P.S. 307.

The first two years of Rose's tenure as principal of P.S. 307 passed without incident. Once again, the students' reading and math scores improved and Rose received satisfactory ratings for her job performance. Things took a turn for the worse, however, in the summer of 1992.

During the 1992 summer session between her second and third years as principal of P.S. 307, Rose worked as site supervisor for the summer program at P.S. 93. For the first time in her career with the Board, that summer Rose received an unsatisfactory job evaluation. Rose's supervisor, Carol Friedman, commented in the evaluation that Rose had endangered the student body by permitting an early dismissal from the school grounds and that Rose had generally failed to manage resources adequately.

Rose's relationship with the Board continued to deteriorate during the 1993–1994 academic year. Beginning in 1993, Dr. Lester Young was assigned as school superintendent in Rose's school district and became her direct supervisor. Friction between the two quickly became evident. Young cited Rose for a number of incidents involving her direction of P.S. 307. For example, Young reprimanded Rose for an incident where she asked parents at P.S. 307 to help cover the cost of student textbooks—a violation of Board policy. Young also cited Rose for her failure to submit reports in a timely manner. In total, Rose claims that Young wrote over 30 letters regarding her poor performance to be placed in her file.

At one point during the 1993–94 school year, asbestos was discovered in the school building. During a PTA meeting held to discuss the matter, Rose was allegedly accosted by angry parents. When she reported the incident to Young, Rose claims that he told her to "let it go" and informed her that if she could not follow his instructions, he would replace her with someone "younger and cheaper." Rose claims that Young told her that he would replace her with someone "younger and cheaper" on a second occasion in February 1994 in connection with a disagreement they had over the placement of a teacher. At trial, Young denied having made these or any other comments about replacing Rose with a younger person.

In March 1994, Rose met with Young and a union representative. During that meeting, Young outlined five unsatisfactory aspects of Rose's job performance. These were: inability to maintain a safe and orderly environment; failure to produce an effective administration plan; inability to motivate staff or work effectively with parents; failure to comply with Board and district policies; and failure to develop a calendar of activities and complete textbook orders. Young informed Rose that unless there was dramatic improvement in these areas, she would not retain her position.

In June 1994, Young gave Rose an unsatisfactory evaluation, and recommended to the Board that Rose's service as non-tenured principal of P.S. 307 be "discontinued." In July 1994, the Board followed that recommendation and reassigned Rose

to an assistant principal position at P.S. 256. In the fall of 1994, Rose officially received an unsatisfactory rating for the 1993–94 school year.

## B. EEOC complaints and district court proceedings

In April 1994, after Young's alleged "younger and cheaper" remarks, Rose filed a complaint with the EEOC alleging sex and age-based harassment. After her demotion a few months later to assistant principal, Rose filed a second complaint with the EEOC alleging retaliation. In December 1995, Rose filed the instant suit in the Eastern District. In her complaint, Rose alleged that the school board had violated the ADEA when it demoted her because of her age.[2] Rose claimed that she was replaced at P.S. 307 by someone younger and less experienced than herself and that her demotion cost her approximately $45,000 in lost salary. Rose sought injunctive relief, back wages and compensation for her physical and emotional suffering.

In April 2000, plaintiff's case came to trial before Judge Johnson. Both Rose and Young testified regarding the events discussed above. In her testimony Rose described, among other things, the asbestos incident including Young's "younger and cheaper" remarks. Rose also offered explanations for the Board's various complaints regarding her performance. When Young took the stand, he denied making any age-related statement and claimed that he was not even aware of Rose's age.

At the close of evidence, the district judge held a charge conference at which he presented the parties with proposed jury instructions. Rose's counsel objected to a portion of the charge describing defendant's burden and asked the court to give the jury a *Price Waterhouse* burden-shifting instruction. In particular, counsel requested that the jury be instructed to shift to defendant the burden of showing that Rose would have been demoted even without Young's discriminatory animus. Defendant Board strongly opposed this request, and the district court reserved decision.

Thereafter, both parties presented closing arguments. After the parties completed their summations, the district court informed them that he had accepted defendant's position on the burden issue and would not give the jury a burden-shifting charge. Rose's counsel voiced his objection but the district judge adhered to his ruling. The jury was charged and no further objections were raised. The jury returned a verdict for defendant and answered "no" on a special verdict form to the following question: "Do you find that plaintiff Shirley Rose has proven by a preponderance of the evidence that age was a determinative factor in defendant['s] ... demoting her from her position as probationary principal...."

This appeal followed.

## II. Discussion

### A. Jury Instructions

Rose claims that the district court erred in failing to give the jury a burden-shifting charge under *Price Waterhouse*. In response, the Board contends that (1) Rose waived this argument by failing to object to the instructions after the jury had been

---

**2.** Later, in April 2000, Rose filed an amended complaint in the district court. The amended complaint alleged five separate causes of action: age discrimination, gender discrimination, retaliation, deprivation of constitutional rights and damage to reputation. On the eve of trial, Rose withdrew all claims except for age discrimination and retaliation. On appeal, Rose does not press her retaliation claim and we do not consider it.

charged; and (2) the charge plaintiff requested was not justified on the trial record.

### 1. The Board's claim of waiver

We turn first to the issue of waiver. At the outset, we note that Rose objected twice to the court's proposed charge: first, at the charge conference (before closing arguments) and later when the judge denied Rose's request for a burden-shifting instruction (after closing arguments). In her first objection, Rose specifically cited *Price Waterhouse* for the proposition that the Board should bear the burden of showing, by a preponderance of the evidence, that it would have demoted her even in the absence of discrimination. As discussed above, the district judge then deferred decision on this question until after closing arguments. At that point, the judge stated (outside the presence of the jury) that he denied plaintiff's request for a *Price Waterhouse* charge and rejected her objection to the charge as originally drafted. After some colloquy, the judge adhered to his ruling and Rose noted her objection. The judge then gave the instructions to the jury and sent them to deliberate. At this point, however, Rose failed to renew her objection and the Board now argues that this failure waived it.

■■■ "To preserve an objection, Rule 51 requires that a party object after the instruction is read to the jury unless . . . a further objection to the charge . . . would have been futile." *Fogarty v. Near N. Ins. Brokerage Inc.*, 162 F.3d 74, 79 (2d Cir.1998)(internal quotation marks omitted). Our analysis of the futility of a renewed objection is guided by *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 30 (2d Cir.1997), a case involving a similar waiver issue. In *Thornley,* plaintiff had objected twice to the proposed jury instruction but failed to renew the objection after the jury had been charged. We found there that appellant had "argued its position to the district judge, who rejected it, [and] a further exception after delivery of the charge would have been a mere formality, with no reasonable likelihood of convincing the court to change its mind on the issue." *Id.* Here Rose objected twice to the proposed instruction without success before the jury was charged. We conclude that a renewed objection after the judge had completed his charge would, as in *Thornley,* have been futile. Rose therefore sufficiently preserved her objection to the jury charge for appellate review.[3]

### 2. The Board's claim that a Price Waterhouse charge was not warranted

With respect to whether the judge should have given the suggested charge, we review de novo. *LNC Investments Inc. v. First Fidelity Bank,* 173 F.3d 454, 460 (2d Cir.1999).

Rose asserts that she was entitled to a burden-shifting instruction because she proffered direct evidence of discriminatory intent—Young's remarks that he would replace her with someone younger and cheaper. The Board claims that a burden-shifting instruction was not appropriate because Rose did not present a "mixed-motive" case. The Board argues that, in general, discrimination cases can be divided into two categories: pretext cases and mixed-motive cases. In mixed-motive cases, the employer's decision is a product of both permissible and forbidden factors, while in pretext cases, discriminatory animus is the employer's sole motivation.

---

**3.** As we demonstrate below, even if Rose had failed to preserve her objection to the jury instructions and we were to review the charge only for plain error, a reversal and remand would still be warranted.

The Board then stresses that Rose consistently argued that *all* of the Board's evidence of unsatisfactory job performance was mere pretext for the true motivation for her demotion—age-based discriminatory animus. The Board argues that by attacking each of the proffered reasons for her demotion, Rose precluded the jury from finding that her demotion was motivated by both permissible and forbidden factors and eliminated the need for a burden-shifting instruction.

In *Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. 1775, the Court held that "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." The so-called *Price Waterhouse* charge instructs the jury to shift the burden of persuasion to defendant if plaintiff succeeds in showing a discriminatory motive. Although originally intended for Title VII suits, we have held that the *Price Waterhouse* framework applies to actions brought under the ADEA. *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

In *Ostrowski v. Atlantic Mut. Ins. Companies*, 968 F.2d 171, 181 (2d Cir.1992), we discussed application of *Price Waterhouse*. We noted that

> [t]he *Price Waterhouse* principle often leads to the paradoxical situation, as it did in the present case, of a plaintiff asking for a mixed-motive instruction. The *Price Waterhouse* issue does not arise for the trier of fact until the plaintiff has carried the burden of persuading the trier that the forbidden animus was a motivating factor in the employment decision but has failed to persuade the trier that non-discriminatory reasons proffered by the employer were pretexts

and not also motivating factors. Once the presentation of evidence is sufficient to create this possibility, the employer has the option of defending on the *Price Waterhouse* ground that it would have made the same decision even in the absence of a discriminatory motive. *Price Waterhouse* is thus a defense. However, for tactical reasons, it is often only the plaintiff who asks for a *Price Waterhouse* instruction, for when requests to charge are submitted, the employer may well choose to avoid the burden-shifting language in the *Price Waterhouse* charge, hoping that the jury either will not find a forbidden animus or will believe the burden is on the plaintiff in the case of a mixed motive. We thus believe that the plaintiff will be entitled to a burden-shifting instruction on the *Price Waterhouse* defense where the evidence is sufficient to allow a trier to find both forbidden and permissible motives. In such circumstances, the failure to give such an instruction would create a risk that the jury, having agreed with the plaintiff's evidence that a forbidden animus played a motivating part in the employment decision but not with the plaintiff's contention that the employer's proffered explanations were pretextual, would mistakenly believe that the plaintiff had the burden of showing that the same employment decision would not have occurred in the absence of the forbidden motive.

*Id.* We further noted that evidence of a forbidden factor may be direct or circumstantial, although the latter must be

> tied directly to the alleged discriminatory animus. For example, purely statistical evidence would not warrant such charge; ... nor would 'stray' remarks in the workplace by persons who are not involved in the pertinent decisionmaking process. If however, plaintiff's non-sta-

tistical evidence is directly tied to the forbidden animus, *for example ... statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus[,] ... plaintiff is entitled to a burden-shifting instruction.*

*Id.* at 182 (emphasis added).

■ We believe that the "younger and cheaper" remarks attributed to Young were direct evidence of discriminatory animus toward Rose. If the jury believed her account, it could reasonably have found a forbidden motive at work. Young's alleged statements to Rose were not the stray remarks of a colleague but rather were comments made directly to her on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process. See *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 162–62 (2d Cir.1998) (finding sufficient "statements directly mentioning youth ... [which] were not made by random coworkers who were uninvolved in the decision-making process"). We therefore find that Rose provided sufficiently direct evidence of discrimination to allow a jury to find that her demotion was motivated, at least in part, by a forbidden factor.

■ Defendant argues that even with direct evidence of discriminatory animus, Rose cannot request a burden-shifting instruction when she also challenges each of the proffered motives as pretext. This is an inaccurate reading of our case law. As we stated in *Ostrowski,* 968 F.2d at 181,

[w]hen a plaintiff requests and is entitled to a *Price Waterhouse* instruction ... the jury must be told that the mixed-motive issue does not arise unless it first determines that the plaintiff has carried the burden of proving a forbidden motive but has failed to prove that the employer's explanations were pretextual.

As a corollary of this rule, a plaintiff may request a *Price Waterhouse* charge based on evidence of a forbidden motive even when she attempts to show that all of the employer's non-discriminatory explanations are pretextual. We see no reason why a plaintiff's claims of pretext should preclude a jury's consideration of mixed motives under proper instructions, where, as here, the employer has produced sufficient evidence to allow the jury to find that the employer's decision was motivated by permissible factors. Thus, where a plaintiff provides sufficiently direct evidence of discriminatory animus and also challenges all of defendants proffered motives as pretextual, a jury must be instructed, if requested, to apply the *Price Waterhouse* burden-shifting analysis if it finds the employer was motivated by discriminatory animus but is not fully persuaded by the plaintiff's claims of pretext.

■ At oral argument, defendant also claimed that the jury's answer to the first question on the special verdict sheet—finding that Rose had not shown that "age was a determinative factor" in her demotion—rendered harmless any errors in the jury instructions. Again, based on *Ostrowski,* we disagree. In *Ostrowski* the jury answered the following question in the negative: "Do you find that retaliation on the issue of age discrimination was a determinative factor in [defendant's] terminating plaintiff?" *Id.* at 176. Notwithstanding the jury's negative answer to this question, we found that the district judge's failure to give a burden-shifting *Price Waterhouse* charge was reversible error. "Since the jury was given no indication that [defendant], on any view of the evidence, could have any burden of proof, [plaintiff] is entitled to a new trial with the jury properly instructed." *Id.* at 184. The question sent to the jury in this case was in substance identical to that in *Ostrowski.* We

therefore find that Rose is entitled to a new trial with a proper charge to the jury.

## B. Exclusion of plaintiff's witnesses

Rose contends that the district court erred when it excluded evidence she had proffered regarding a pattern of discriminatory acts by Young.[4] Rose sought to question two witnesses, Ms. Solomon and Ms. Kabler, both of whom were assistant principals under Young, about their experiences of age-based discrimination. The Board argues that (1) Rose's claim is time-barred because she failed to mention a pattern of discrimination in her EEOC complaint; and (2) the testimony of Solomon and Kabler would have been irrelevant because neither was a school principal and thus neither was similarly situated to Rose.

A claim that is "reasonably related" to the allegations contained in an EEOC complaint will not be time-barred so long as the original complaint is filed within 300 days of the alleged act of discrimination. *Butts v. City of New York Dept. of Hous. Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993). We have recognized that a subsequent claim will be reasonably related to the original complaint if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1402 (internal quotation marks omitted). In her first EEOC complaint, Rose alleged age and sex-based discrimination on the part of Young. On our view, an investigation following such a complaint could reasonably be expected to inquire into other instances of alleged discrimination by the same actor.

With respect to the Board's second argument, testimony from two assistant principals who worked under Young regarding other instances of age-based discrimination would presumably be relevant on the issue of Young's discriminatory animus towards the elderly. The district court apparently held, and the Board now more fully articulates, that the testimony was not relevant because the witnesses were not similarly situated to Rose. It is true that, unlike Rose, Solomon and Kabler were *assistant* school principals, not principals. However, all three women were high-level school administrators in the protected class. We believe that the distinction between assistant principal and principal, standing alone, does not render irrelevant Solomon and Kabler's testimony. We leave to the district court the resolution of any other disputed issues regarding the relevancy of these witnesses' testimony, including whether either witness is or ever has been directly supervised by Young. We have, of course, not considered what other objections the Board may raise to the testimony of these witnesses in a new trial in the district court.

For the reasons set forth above, we vacate the judgment of the district court and remand for a new trial consistent with this opinion.

---

4. Because our decision in Part II.A above requires a new trial, this issue is no longer dispositive. However, because Rose may seek to call these two witnesses on remand, we consider the parties' arguments and attempt to provide some guidance.