**Donna S. JUTE, Plaintiff–Appellant,**

**v.**

**HAMILTON SUNDSTRAND CORP., Defendant–Appellee.**

**Docket No. 04–3927–CV.**

United States Court of Appeals, Second Circuit.

Argued May 17, 2005.

Decided Aug. 23, 2005.

Barbara E. Gardner, Manchester, CT, for Appellant.

Felix J. Springer, Day, Berry & Howard, Hartford, CT (Daniel A. Schwartz, Douglas W. Bartinik, Day, Berry & Howard, Hartford, CT, of counsel), for Appellee.

Jason M. Mayo, Equal Employment Opportunity Commission, Washington DC (Eric S. Dreiband, General Counsel, Lorraine C. Davis, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Equal Employment Opportunity Commission, Washington DC, of counsel), for Amicus Curiae Equal Employment Opportunity Commission.

Before: MESKILL, NEWMAN and CABRANES, Circuit Judges.

MESKILL, Circuit Judge.

In this appeal from a summary judgment entered in the United States District Court for the District of Connecticut, Covello, *J.*, we are asked to determine the scope of Title VII's anti-retaliation clause forbidding an employer from retaliating against an employee who has "testified, assisted, or participated in any manner" in a Title VII related proceeding. We previously have held that an employee who offers testimony in a Title VII lawsuit squarely engages in a form of statutorily protected activity. We now determine that such protection extends to an employee who is named as a voluntary witness in a Title VII suit, but who is never called on to testify. Our previous interpretation of the anti-retaliation clause and the congressional intent behind Title VII lead us to this conclusion. We therefore affirm the district court's determination that the employee in this case "participated" in protected activity for the purposes of alleging her retaliation claims.

However, we conclude that the district court erred in its summary dismissal of

those claims. First, the court neglected to recognize and weigh certain adverse employment actions as relevant background evidence, and second, it impermissibly limited the suit to only those accusations explicitly raised in a retaliation charge filed with the Equal Employment Opportunity Commission (EEOC). Finally, we hold that the district court prematurely dismissed an allegation that the defendant-employer retaliatorily furnished a negative job reference. Absent these errors, a factual record sufficient to withstand summary judgment exists.

Therefore, we affirm the judgment of the district court in part, vacate it in part, and remand for trial.

## I.

As we must, we relate the facts of this dispute in the light most favorable to the plaintiff.

In August 1986, Donna S. Jute began working for Hamilton Sundstrand Corp. (Hamilton), a corporation headquartered in Connecticut that designs and manufactures aerospace products. For approximately fourteen years she worked in various hourly wage positions with the company. On January 11, 2000, Jute was terminated along with nineteen other employees in her pay grade. Hamilton asserts that Jute's termination was the result of a post-merger reorganization, whereas Jute claims it was retaliatory.

Specifically, Jute contends that Hamilton began to retaliate against her immediately after she was named as a witness in a co-worker's Title VII lawsuit.[1] The plaintiff in that case, Maryanne Brunton, claimed that in June 1994—while she campaigned for an executive board position with the union representing Hamilton's hourly employees—sexually disparaging flyers about her were posted throughout the workplace. In response to these postings, Hamilton initiated an internal investigation. Apparently at both Brunton's and Hamilton's separate requests, Jute provided two statements to investigators in which she attested to witnessing a female co-worker leave the denigrating flyers in a company restroom.

Based on the foregoing incident, in December 1995, Brunton sued Hamilton, as well as her union and its president, alleging that she had been subjected to a hostile work environment. *See* 42 U.S.C. § 2000e *et seq.* The Brunton litigation progressed for approximately three years, during which time Jute's 1994 statements to the Hamilton investigators were incorporated into the record. In addition, Jute agreed to testify on Brunton's behalf. To that end, Jute saved several vacation days to ensure that she could readily take time off from work to be deposed. Moreover, during a deposition conducted on July 9, 1998, Brunton named Jute as the sole witness who had observed another employee posting the flyers in the women's restroom. Before Jute was called to offer deposition testimony of her own, the Brunton lawsuit settled.

---

1. We note that Jute argued in the district court that her involvement in protected activity pre-dated the Brunton litigation by some eight years, given that in 1990 she had lodged an internal complaint of sexual harassment against a supervisor. The district court concluded that the filing of this complaint qualified as protected activity, but deemed that it was "far too remote in time to be causally linked to any of the adverse actions" which, as we discuss below, occurred in 1999 or 2000. *Jute v. Hamilton Sundstrand Corp.*, 321 F.Supp.2d 408, 418–19 (D.Conn.2004). Jute does not challenge this holding on appeal. Accordingly, this issue is deemed abandoned. *See Perez v. Hoblock*, 368 F.3d 166, 171 (2d Cir.2004).

The day after Brunton's July 9, 1998 deposition, Jute claims that she heard her supervisor, Natonia Crowe–Hagans, angrily "storming down the hall" toward Jute's workstation. Crowe–Hagans confronted Jute and removed her from a team (the "JDE team") that was upgrading Hamilton's computer system, even though she had been working as a technician with the team for well over a year. Jute suggests that this demotion was particularly suspect given that, in a formal performance appraisal, a supervisor had deemed her work with the team to be a "tremendous asset," and in July 1998 the project was at a critical stage. In addition, the post with the JDE team offered Jute a unique opportunity for career advancement at Hamilton. Jute asserts, for example, that she had been promised a salaried position or a pay raise if her productivity with the team continued.

Initially, Jute did not suspect that her removal was traceable to the Brunton litigation. In December 1998, however, Jute contacted Brunton to ask whether she would be deposed sometime in early December, otherwise she was prepared to use her saved vacation days during the Christmas holiday. It was during this conversation that Jute learned for the first time that the case had settled, and more significantly, that Brunton had named Jute as a favorable witness during the July 9 deposition. Now suspicious, Jute approached Hamilton's Manager of Human Resources, Ingrid Delgado, about the situation. According to Jute, Delgado instructed her to "find another job" as the harassment was "never going to stop." In this suit, Jute points to Delgado's statement as direct proof of retaliatory animus.

In addition to the removal from the JDE team, Jute alleges that after Brunton's deposition, and over the course of two years, Hamilton engaged in numerous other retaliatory acts. First, in August 1998, Hamilton informed Jute that she was no longer needed to teach an evening aerobics class at Hamilton, a position Jute sought to supplement her income. Second, in September 1998, Hamilton elected not to promote Jute to a higher pay grade despite Crowe–Hagans' alleged earlier promise to do so. Third, in September 1998, Jute served as a "cutoff" for promotion training, meaning that Jute and employees less senior than she could receive a promotion only if they worked nights.[2] Fourth, in September 1999, Jute was denied a promotion despite having completed the requisite training. Fifth, in September 1999, Hamilton denied the JDE team leader's request that Jute accompany the team on business trips.[3] Sixth, in December 1999, Jute was denied a salaried position with Hamilton—a position that might have insulated Jute from layoffs aimed at hourly employees that were part of a post-merger corporate restructuring. Seventh, as part of the restructuring, Jute was fired in January 2000. Finally, Jute claims that following her termination she was "black-balled" when she was not referred to International Fuel Cells (IFC), a company related to Hamilton, for future employment. Thus, while other former Hamilton employees with less experience than Jute were interviewed and hired by IFC in the winter and spring of 2000, IFC never contacted Jute.

---

2. Due to concerns over who would care for her young daughter during the evening hours, Jute declined to enter the evening training program. Despite declining the opportunity, Hamilton eventually elected to train Jute for potential promotion on the day shift.

3. Although, as already discussed, Jute had been removed from the JDE team a year earlier.

On May 18, 2000, Jute filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities (CCHRO) and with the EEOC. In the charges, Jute specifically alleged that Hamilton retaliatorily (1) terminated her in January 2000; (2) denied her a salaried position in January 2000, making her vulnerable to the impending layoff; and (3) withheld a promotion in September 1999, although she had completed the necessary training. On October 5, 2000, the CCHRO dismissed Jute's charge, finding that further review was not likely to reveal a wrongful firing. Separately, on December 5, 2000, the EEOC issued a right to sue letter.

While her administrative charges were pending before the CCHRO and EEOC, Jute secured an interview for a position with IFC. Jute claims that she was offered a job with the company in November 2000, but that the offer was subsequently withdrawn. Jute contends that the position was rescinded because of comments her former supervisor, Byron Yost, made during a reference check. Yost apparently advised an inquiring IFC representative that he had been directed not to discuss matters pertaining to Jute because she "had a lawsuit pending" against Hamilton. Technically, this comment was not true. At that time Jute had only filed administrative charges with the EEOC and CCHRO.

## II.

■ Two months after Yost's comment, in January 2001, Jute filed a complaint against Hamilton alleging retaliation under Title VII and Connecticut state law.[4] *See* 42 U.S.C. § 2000e *et seq.;* Conn. Gen. Stat. § 46a–60 *et seq.* Following numerous settlement attempts and a period of discovery, Hamilton moved for summary judgment dismissing the complaint. In a comprehensive, twenty-two page published opinion, the district court granted the request on the basis that Jute failed to establish a *prima facie* case of retaliation. *See Jute v. Hamilton Sundstrand Corp.,* 321 F.Supp.2d 408, 419 (D.Conn.2004). In so doing, the district court agreed with all of Hamilton's arguments but one, agreeing with Jute that her involvement in the Brunton litigation constituted "protected activity." *See id.* at 416. As for Jute's further involvement in protected activity, the district court noted that—as Hamilton conceded—it would have been unlawful to retaliate against Jute because she had filed charges with the CCHRO and EEOC.[5] *See id.*

The district court then proceeded to consider whether Jute had been subjected to any adverse employment actions. It held that Jute was time-barred from raising as actionable conduct those alleged adverse employment actions that occurred before July 23, 1999, because they amounted to discrete acts occurring more than three hundred days before the filing of the CCHRO and EEOC charges. *See id.* at

**4.** Connecticut courts examine federal precedent for guidance in construing Connecticut's anti-discrimination statute. *See, e.g., Levy v. Commission on Human Rights & Opportunities,* 236 Conn. 96, 103, 671 A.2d 349, 355 (1996). Accordingly, the state and federal claims are coextensive, and thus we need not and do not analyze them separately.

**5.** Before the district court, Jute also maintained that the two statements she provided in

1994 during Hamilton's internal investigation constituted protected activity. The district court disagreed, holding that Jute completely failed to put forth evidence that the investigation was conducted pursuant to Title VII. *See Jute,* 321 F.Supp.2d at 415. Neither Jute nor the EEOC, as *amicus curiae,* has challenged this holding. The issue has therefore been abandoned. *See Perez,* 368 F.3d at 171.

417. Consequently, the district court ruled that it could "not consider" these alleged instances of adverse employment action, which formed the lion's share of Jute's claims. *Id.*

The court also held that it could not "consider" actions occurring within three hundred days of the filing of the EEOC charge unless they were specifically pled before the EEOC. *Id.* at 418. On this basis, the district court refused to examine Jute's allegations regarding the September 1999 retaliatory refusal to authorize travel with the JDE team, or the January 2000 retaliatory refusal to list her name to IFC for potential hire. *See id.*

Based on the time-bar and failure-to-plead rulings, the district court strictly limited itself to a consideration of the following alleged adverse employment actions: (1) the September 1999 promotion denial; (2) the January 2000 decision not to elevate Jute to a salaried position; (3) the January 2000 termination; and (4) the November 2000 comments made during the IFC reference check. *See id.* With the evidence so narrowed, the district court held that there existed a "significant lapse[ ] of time" between the protected activity on the one hand (*i.e.,* the July 1998 disclosure of Jute as a witness in the Brunton litigation), and the first instance of adverse employment action considered by the court on the other hand (*i.e.,* the September 1999 promotion denial). *Id.* The court thus reasoned that these events were temporally "too far removed" to satisfy Title VII's causal link element. *Id.* at 419.

But, the district court did hold that there existed some temporal proximity between a protected activity and an alleged instance of adverse action. Specifically, the court ruled that the statements Yost made during IFC's reference check in November 2000 were close enough in time to Jute's May 2000 CCHRO and EEOC fil-

ings to support an inference of causation. *See id.* Nonetheless, the district court held that even these events did not present a triable issue because Jute did not submit an affidavit or direct proof from an IFC representative to show that Hamilton's statements "'caused or contributed to [her] rejection by [IFC].'" *Id.* (quoting *Sarno v. Douglas Elliman–Gibbons & Ives,* 183 F.3d 155, 160 (2d Cir.1999)). The district court thus held that Jute had failed to present a *prima facie* case of retaliation. Accordingly, the claims were dismissed and this timely appeal followed.

### III.

We review *de novo* the district court's grant of summary judgment, *see Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003), construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, *see Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). In some respects then, summary judgment may be viewed as a "drastic procedural weapon because its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Garza v. Marine Transp. Lines,* 861 F.2d 23, 26 (2d Cir.1988) (internal quotation marks omitted).

Title VII forbids any employer from "discriminat[ing] against any of [its] employees ... because he has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e–

3(a). Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998).

 First, the plaintiff must establish a *prima facie* case. That is, an employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2d Cir.2001). The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the *prima facie* stage has been characterized as " 'minimal' and *'de minimis.'* " *Woodman v. WWOR–TV,* 411 F.3d 69, 76 (2d Cir.2005) (quoting *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001)). In determining whether this initial burden is satisfied in a Title VII retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987).

 If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Quinn,* 159 F.3d at 768. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action. *See Fields v. New York State Office of Mental Retardation & De-*velopmental Disabilities, 115 F.3d 116, 120–21 (2d Cir.1997). In this regard, a retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of disparate treatment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996).

As noted earlier, the district court determined that Jute was unable to establish a *prima facie* case and consequently dismissed the suit. It is to the propriety of this decision that we now turn.

A. *By Being Named as a Potential Witness, Did Jute "Participate" in a Title VII Case?*

 Section 704(a) of Title VII provides protection for two distinct classes of employees: first, those opposing discrimination proscribed by the statute and second, those participating in Title VII proceedings. To be specific, the so-called anti-retaliation clause of § 704(a) reads, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (emphasis added). The district court held that Jute's involvement in the Brunton litigation qualified as "participation" in a Title VII related proceeding. On appeal, Hamilton raises this threshold issue, arguing that Jute's involvement in the Brunton suit was too attenuated to so qualify. We disagree.

We recently had occasion to consider the scope of § 704(a)'s participation clause. In *Deravin v. Kerik*, we explained that its "explicit language . . . is expansive and seemingly contains no limitations." 335 F.3d 195, 203 (2d Cir.2003). This determination rested on the statute's use of the phrase "participate[ ] in any manner." *Id.* We found that these words evinced Congress' intent to confer exceptionally broad protection as " 'the word "any" has an expansive meaning,' and thus, so long as 'Congress did not add any language limiting the breadth of that word,' the term 'any' must be given literal effect." *Id.* at 204 (quoting *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)). Against this backdrop, we held that an employee who involuntarily testified in an employment discrimination case about his own allegedly discriminatory conduct had participated in a Title VII proceeding. *Id.* at 205.

In this case we face a slightly different circumstance. Here, Jute volunteered to offer testimony to support another's discrimination lawsuit, but she was never called on to do so. Guided by our previous definition of the anti-retaliation clause and by the need to "interpret [the] provision in light of Title VII's overall remedial purpose," *id.* at 204, we draw no significant distinction between *Deravin* and the instant case.

First, as we must, we begin with the text of the relevant statute. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998). As already stated, the anti-retaliation clause protects an individual who has "participated in any manner" in a Title VII related proceeding. 42 U.S.C. § 2000e–3(a). The plain meaning of the term "participate" provides each side in the pending appeal with helpful language. On one hand, helpful to Hamilton, some authorities define participation as requiring some deliberate, affirmative action. *See, e.g., Black's Law Dictionary* 1151 (8th ed.2004) (defining "participation" as "[t]he act of taking part in something, such as a partnership, a crime, or a trial"); *American Heritage College Dictionary* 995 (3d ed.2000) (defining "participate" as "[t]o take part in something"). On the other hand, other authorities define participation as encompassing the kind of involvement that Jute had in the Brunton litigation. *See, e.g.,* XI *Oxford English Dictionary* 268 (2d ed.1989) (defining participation as "[a] taking part, association, or sharing (with others) *in* some action or matter"); *Webster's Third New International Dictionary* 1646 (1993) (defining participate as "to have a part or share in something"). These latter definitions are helpful to Jute: having been named as a voluntary witness who had agreed to offer testimony on matters relevant to Brunton's case, it may be plausibly argued that Jute "ha[d] a part" in or an "association" with the Brunton litigation. Thus, because the anti-retaliation clause sweeps broadly through the phrase "in any manner," a circumstance we recognized in *Deravin*, we might be justified in resolving the matter by resorting only to the plain language of the statute.

But, we need not resolve the issue solely on this basis. We find additional support in that canon of statutory construction that allows us to consider the broader context of the statute as a whole to ensure that statutory language is defined in accordance with a statute's overall purpose. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *see also Robinson*, 519 U.S. at 345–46, 117 S.Ct. 843.

Title VII combats unlawful employment practices, and it does so principally

through reliance on employee initiative. In recognition of this fact, Congress enacted the anti-retaliation clause to shield an employee from employer retaliation following the employee's attempt to challenge discriminatory conduct. The Supreme Court has therefore opined that a primary purpose of § 704(a) is to "[m]aintain[ ] unfettered access to statutory remedial mechanisms." *Robinson,* 519 U.S. at 346, 117 S.Ct. 843.

It would be destructive of this purpose to leave an employee who is poised to support a co-worker's discrimination claim wholly unprotected. Accepting Hamilton's argument would mean, for example, that an employer could freely retaliate against a Title VII whistleblower, as long as it did so before the employee actually testified. Placing a voluntary witness into this kind of legal limbo would impede remedial mechanisms by denying interested parties "access to the unchilled testimony of witnesses." *Glover v. South Carolina Law Enforcement Div.,* 170 F.3d 411, 414 (4th Cir.1999). Thus, declining to extend § 704(a) to an employee like Jute would thwart the congressional intent underlying the anti-retaliation clause.

Based on the foregoing, and accepting *all* of Jute's allegations as true, we hold that Jute is entitled to protection from retaliation by virtue of her involvement in the Brunton litigation. The record before us shows that Jute had collaborated with Brunton, such that Brunton candidly named Jute as a voluntary and favorable witness. Moreover, the record indicates that Jute planned to testify on Brunton's behalf: as Jute testified in this case, she had saved vacation days so that she would be immediately available for deposition in the Brunton litigation when finally called. *Cf. Gifford v. Atchison, Topeka & Santa Fe Ry.,* 685 F.2d 1149, 1156 n. 3 (9th Cir.1982) (holding that there existed "no

legal distinction . . . between the filing of a charge [with the EEOC], which is clearly protected, and threatening to file a charge") (internal citation omitted); *Sword v. Runyon,* EEOC DOC 01956313, 1996 WL 284281, at *2 (E.E.O.C. May 17, 1996) (explaining that an employee's "intended use of the EEO process" constituted protected activity). And there exists indirect evidence that this intention was communicated to Hamilton. Most convincing, Jute was removed from the JDE team just *one day* after being named as a favorable plaintiff's witness. Moreover, within a month, Jute claims Hamilton engaged in two additional retaliatory acts (*i.e.,* the rescission of both the aerobics instructor position and a promised promotion). This chain of events would allow a jury to infer that Hamilton knew about Jute's involvement in the Brunton lawsuit. *See Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000) (noting that jury could find employer's knowledge of protected activity from circumstantial evidence); *see also Woodman,* 411 F.3d at 83 (observing in Title VII discrimination case that " '[k]nowledge' is a fact often established—even in criminal cases where the prosecution's burden is beyond a reasonable doubt—simply through circumstantial evidence").

To be sure, Jute's participation in the Brunton litigation was indirect as compared to the situation we would confront had Jute actually provided deposition testimony. But, as we recognized in *Deravin,* Congress chose to provide wide-ranging protection by shielding an employee who "participate[s] in any manner" in a Title VII proceeding. 42 U.S.C. § 2000e–3(a). Therefore, we conclude that Congress intended the anti-retaliation clause to protect a volunteer witness poised to testify in support of a co-worker's discrimination claims.[6]

Having established that Jute engaged in a known, protected activity by her involvement in the Brunton litigation, we now turn to whether Jute established the remainder of a *prima facie* case.

### B. *Did Jute Establish a Prima Facie Case?*

Whether Jute established the remaining elements of a *prima facie* case under Title VII principally turns on that element requiring an employee to demonstrate a causal link between the protected activity and the adverse action. The district court held that Jute fell short in doing so because there existed "significant lapses of time" between Jute's protected activity in July 1998 and the actionable adverse employment actions, the earliest of which occurred in September 1999. *Jute,* 321 F.Supp.2d at 418. We hold that the district court erred in so ruling for two reasons. First, it did not consider the events that occurred before September 1999 as relevant "background evidence." We hold that with proper consideration of these events supporting the actionable claims, a rational jury could find a causal link between the protected activity and the actionable adverse acts. Second, the court erred in not adequately considering certain adverse acts on the ground that Jute had not specifically raised them in the EEOC charge. Here too, we hold that this error led the court to conclude that Jute had failed to sustain a *prima facie* case. We address each instance of error in turn.

### 1. *Background Evidence*

An aggrieved employee claiming retaliation must file a charge with the EEOC no later than 180 or 300 days after the alleged adverse act occurs, the exact timing dependent on whether a state has its own agency with authority to investigate the claim. *See* 42 U.S.C. § 2000e–5(e)(1). Here, because Jute initially instituted proceedings before the CCHRO and with the EEOC, the 300–day limitations period applies. *Id.* Specifically, then, as Jute filed her charges on May 18, 2000, the limitations period allowed Jute to sue only for those adverse acts that occurred on or after July 23, 1999. As the district court properly ruled, any discrete acts occurring before that date are not actionable. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Jute does not contest that ruling, but instead asserts that the court impermissibly barred her from relying on the pre-July 23, 1999 adverse employment acts as background evidence to support the actionable claims. We agree.

When, as here, an employee's allegations of retaliation extend beyond the limitations period, the circumstances surrounding the claim will determine precisely what consideration is owed to the time-barred conduct. *See Petrosino v. Bell Atlantic,* 385 F.3d 210, 220 (2d Cir.2004). The statute of limitations requires that only one alleged adverse employment action have occurred within the applicable filing period. But, evidence of an earlier alleged retaliatory act may constitute relevant "background evidence in support of [that] timely claim." *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061; *see also Petrosino,* 385 F.3d at 220, 226. Hence, relevant background evidence, such as statements

---

**6.** Despite our holding, we emphasize that we do not mean to imply that § 704(a)'s participation clause is so expansive that it encompasses *every* situation in which a plaintiff is involved in a Title VII proceeding, no matter how passively, a position urged by the EEOC. Rather, as stated, our decision rests on the need to reconcile the particular facts of this case with the congressional intent anchoring the anti-retaliation clause.

by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act. *See, e.g., Petrosino,* 385 F.3d at 220 (characterizing "earlier promotion denials" as "relevant background evidence") (internal quotation marks omitted); *Lyons v. England,* 307 F.3d 1092, 1101, 1111–12 (9th Cir.2002) (explaining that background evidence may include being shifted to "non-career enhancing jobs" and promotion denials); *Roebuck v. Drexel Univ.,* 852 F.2d 715, 733 (3d Cir.1988) (explaining that decisionmaker's statements of racial bias "standing alone, occurring as they did over five years before the [adverse employment action], could not suffice to uphold a finding [of discrimination, although] they do add support, in combination with the other evidence, to th[at] ultimate conclusion").

But the district court chose not to "consider" those alleged instances of adverse employment action occurring before July 1999, a choice that significantly altered the nature of Jute's case. For instance, the pre-July 1999 conduct here, when considered as background evidence, shows a chain of events that arose immediately after Brunton's deposition that might support Jute's timely claims. On July 10, 1998, one day after the deposition, Jute was shifted from a career-enhancing position with the JDE team. Then, one week later, Hamilton rescinded a position that would have allowed Jute to supplement her income by teaching a Hamilton-sponsored aerobics course. Moreover, less than a month after Brunton's deposition, Jute was denied a promised promotion. These facts, although not actionable because they pre-date July 1999, might nonetheless re-

main admissible at trial and could lead a rational jury to find a causal link between the protected activity and the actionable adverse acts.[7] *Cf. Cifra v. General Elec. Co.,* 252 F.3d 205, 218 (2d Cir.2001) (holding that closeness in time between the protected activity and evidence of retaliatory action may be unusually suggestive of retaliatory motive); *see also Quinn,* 159 F.3d at 769 (reasoning that causal connection established when protected activity preceded adverse action by ten days). We therefore hold that the district court's failure to consider any of the pre-July 1999 acts led it to erroneously conclude that Jute fell short in establishing the causal link element necessary for a *prima facie* case.

### 2. *Allegations Absent from EEOC Charge*

■■■■ In addition, we find reversible error in the district court's decision not to consider adverse employment acts that Jute did not specifically raise in the EEOC charge. "[L]oose pleading" is permitted before the EEOC. *Deravin,* 335 F.3d at 202. Thus, "[w]e have recognized ... that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (per curiam) (internal quotation marks omitted). Reasonably related conduct is that which "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald,* 251 F.3d at 359–60 (internal quotation marks

---

7. In so ruling, we express no view as to whether, at the time of trial, evidence of these incidents ought to be admitted under any applicable rule of evidence. *See* Fed.R.Evid. 401, 403. The district court retains discretion to determine this issue should the occasion arise. *See Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1211 (2d Cir.1993); *see also Lyons v. England,* 307 F.3d 1092, 1110 (9th Cir.2002).

omitted). A complaint of retaliation "could reasonably be expected to inquire into other instances of alleged [retaliation] by the same actor." *Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 163 (2d Cir.2001).

The district court held, however, that it could not consider the January 2000 claim of retaliatory refusal to list Jute's name to IFC for potential hire because, although it arose within the 300–day limitations period, Jute failed to specifically mention it in the EEOC charge. Under our relaxed pleading standard, exclusion on this ground was error. An investigation into those claims of retaliation explicitly cited in the charge could "reasonably be expected" to yield evidence of other possible acts of retaliation that occurred around the same time. *Id.* Therefore, the district court erred in not considering the circumstances surrounding Hamilton's failure to list Jute for potential hire to IFC, circumstances that serve as an example of possible disparate treatment. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003). Hence, this evidence underscores even further that Jute has carried the minimal burden of establishing a *prima facie* case.[8]

### C. May Jute Proceed on Her Negative Job Reference Claim?

■■ Before we reach the second step of the burden-shifting analysis in this Title VII retaliation case, we address the district court's dismissal of Jute's allegation that Hamilton retaliatorily furnished a negative job reference. As mentioned earlier, Jute claimed that her former supervisor, Byron Yost, advised an inquiring IFC representative that he could not discuss matters pertaining to Jute because she "had a lawsuit pending" against Hamilton. Jute correctly asserts that this statement was false as she had not commenced any such suit when the comment was made. The district court dismissed this claim, reasoning that Jute failed to show that Yost's statement caused or contributed to a job denial. *See Jute*, 321 F.Supp.2d at 419. Dismissal was specifically premised on Jute's inability to present an "affidavit or other sworn testimony from an IFC official attributing its decision to deny Jute employment to [Yost's] communication." *Id.* In so ruling, we hold that the district court required too much. We therefore vacate the dismissal of this allegation as well.

In order to recover on the negative job reference claim, Jute must first show that Yost's comment amounted to an adverse employment action. There exist "no bright-line rules" in this area, so that "courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (internal quotation marks omitted). In the context of this case, we hold that a reasonable jury, after

---

8. We note that on similar reasoning the district court dismissed the September 1999 claim of retaliatory refusal to authorize travel with the JDE team. In light of the permissive pleading standard before the EEOC, dismissal on this basis was inappropriate. Nonetheless, we agree with the district court's ultimate dismissal of this claim for the alternative reason that it does not constitute an "adverse employment action." *See Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir.2005) (explaining that to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities") (internal quotation marks omitted). Jute had been removed from the JDE team over one year before the September 1999 decision denying her the right to travel with the team on business trips. Accordingly, the refusal to authorize travel does not rise to the level of being "adverse." *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997).

hearing the defendant's evidence to the contrary, could find that Yost's *false* statement negatively affected Jute's chances of securing employment. *See EEOC Compliance Manual* § 8–II(D)(2) (May 20, 1998) (citing as possible example of post-employment retaliation "actions that are designed to interfere with the individual's prospects for employment"); *cf. Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054 (2d Cir. 1978) (per curiam). The claim is therefore actionable.

The district court, however, required Jute to prove too much when it mandated that she present an affidavit or other sworn testimony from an official at IFC attributing its non-hire decision to Yost's comment. As a practical matter, it is unlikely that an employee could secure such evidence, as such an admission would subject a potential employer to Title VII claims of its own. *See McMenemy*, 241 F.3d at 284; *see also EEOC Compliance Manual* § 8–II(C)(4) (Dec. 5, 2000) ("[A] violation would be found if a respondent refused to hire the charging party because it was aware that she filed an EEOC charge against her former employer."). Moreover, that IFC is a corporate affiliate of Hamilton makes it even less likely that Jute could procure such evidence. Thus, as is true of most Title VII allegations, to sustain her negative job reference claim Jute is "constrained to rely on circumstantial evidence." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Jute provided such evidence. For instance, she contends that she was offered a job with IFC and seeks to corroborate this claim through her husband. He testified that *after* his wife interviewed with the company in November 2000, an IFC representative telephoned their home. According to his testimony, after the telephone call Jute "was very ecstatic, happy, dancing[,] [a]ctually dancing." Despite Jute's

and her husband's testimony, IFC contends that the job was never offered. Given these competing versions of events, it would not be unreasonable for a jury to credit Jute's husband's testimony and extrapolate that IFC offered Jute a job, but that knowledge of the lawsuit caused it to rescind the offer. *See Sarno*, 183 F.3d at 160.

In sum, there exists adequate circumstantial evidence to permit Jute to proceed to trial on her retaliatory reference claim.

D. *Hamilton's Legitimate, Non-retaliatory Reasons for the Adverse Employment Actions*

█ Because the district court did not reach the remaining steps in the burden-shifting analysis, we ordinarily would be inclined to proceed no further as well. Hamilton argues that affirmance might still be warranted because Jute has failed to offer adequate evidence that would permit a jury to conclude that Hamilton's justification for its acts really serve as a pretext, or a mere cover, for retaliation. Under our *de novo* review, we elect to address Hamilton's argument that there exists an alternative ground for affirmance. *See id.* at 159 ("[W]e are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied.") (internal quotation marks omitted).

Hamilton contends that Jute was terminated due to a restructuring following a corporate merger. This explanation is supported in the record by an undated "General Notice" announcing a post-merger combination of workforce reductions and facility closings aimed at, among others, the facility where Jute worked. In addition, Hamilton has produced a list of individuals affected by the reduction showing that all employees in Jute's pay grade

were terminated along with Jute. Second, and finally, as for Jute's claims that Hamilton retaliatorily failed to promote her, Hamilton has sustained its burden of production in offering legitimate business justifications for these decisions as well. For example, it asserts that in September 1998 Jute effectively declined the offer of promotion when she refused to be trained on the night shift. Hamilton further posits that, in any event, pursuant to a union agreement, the time frame for accepting a promotion had expired by the time Jute had completed the training in September 1999.

As Jute concedes, these offers of proof satisfy Hamilton's burden of articulating legitimate, non-retaliatory reasons to explain the actionable claims of adverse employment action.[9]

### E. Did Jute Present Sufficient Evidence that Would Permit a Jury to Find Hamilton's Proffered Reasons Were Pretext for Retaliation?

We now arrive at the final step of the Title VII burden-shifting test requiring Jute to show that retaliation was a substantial reason for Hamilton's adverse actions. We are satisfied that, on this record, Jute carried her burden on this step.

In particular, Jute has proffered evidence supporting a strong temporal connection between her involvement in protected activity on the one hand, and instances (albeit, not actionable) of retaliation on the other. *See Quinn*, 159 F.3d at 770. As we must construe the record in the light most favorable to Jute at this stage of the case, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, "we conclude that there is a sufficient basis for a trier of fact to doubt the persuasiveness of [Hamilton's] proffered evidence and ultimately to find that the [legitimate, non-retaliatory] reasons offered by [Hamilton] ... were pretextual." *Quinn*, 159 F.3d at 770.

### IV.

As set forth above, the district court properly held that Jute's participation in a co-worker's Title VII lawsuit amounted to protected activity. But, there exist genuine issues of material fact as to Jute's retaliation claims, such that the grant of summary judgment in favor of Hamilton was inappropriate. Accordingly, the judgment of the district court is affirmed in part, vacated in part, and remanded for trial. We emphasize that in so ruling we intimate no view as to the ultimate merits of Jute's claims at trial. We hold today only that the district court prematurely interrupted Jute's right to present her case to a jury, such that now "the 'curtain' should rise," *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984), and the claims should be tried.

---

9. We note that before us Hamilton did not seek affirmance of the dismissal of the retaliatory reference claim by offering a legitimate, non-retaliatory reason to explain that conduct. Instead, Hamilton principally argued that affirmance was warranted because Jute had failed to show that the comment motivated IFC's non-hire decision, an argument that we have already rejected. We therefore have no occasion to consider the second or third steps of the burden-shifting analysis with respect to this claim.