**Mahesh TALWAR, Plaintiff,**

v.

**State of CONNECTICUT, Defendant.**

**Civ. No. 3:06CV00189(AWT).**

United States District Court,
D. Connecticut.

March 27, 2008.

As Amended March 31, 2008.

John R. Williams, New Haven, CT, for Plaintiff.

Eleanor M. Mullen, Attorney General's Office, Hartford, CT, for Defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

The plaintiff, Mahesh Talwar, brings this action against the defendant, the State

of Connecticut, alleging employment discrimination. Count One of the complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Count Two is brought pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.* ("CFEPA"). The State of Connecticut has moved for summary judgment on both counts, and its motion is being granted.

## I. FACTUAL BACKGROUND

Mahesh Talwar ("Talwar") is an adult citizen of the United States residing in Connecticut. He is of Asian ancestry. Talwar was employed by the State of Connecticut (the "State") in various departments for thirteen years, from 1990 to 2003.[1] He worked for the Department of Special Revenue ("DSR") from 1990–93 and for the Department of Administrative Services ("DAS") from 1993–2000. He transferred to the Department of Motor Vehicles ("DMV") for a period of four or five weeks in the summer of 2000, then returned to DAS. Prior to January 2003, the State revised its seniority list to reclassify some employees into different job classifications. Talwar was not reclassified. In January 2003, Talwar was laid off as part of a large layoff by the State. After a period of unemployment, Talwar was re-hired by the State in February 2005 to a position at the Commission on Culture and Tourism, where he still works.

Prior to the layoff in January 2003, Talwar had filed various grievances, complaints, and lawsuits against the State with the State Board of Labor Relations ("SBLR"), the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and the Equal Employment Opportunity Commission ("EEOC") and in federal court. All of these proceedings were based either on the State's refusal to reclassify Talwar to a higher-paying job or on allegations of race discrimination.

In his Complaint, Talwar alleges that he was wrongfully laid off in January 2003 and that the jobs offered to him in accordance with his union bargaining agreement's call-back policy for laid-off employees constituted a demotion. Talwar further alleges that the State had positions open for which he was qualified, but the positions were not offered to him and were offered to less qualified persons. Talwar claims that the alleged discrimination was based on his race and was in retaliation for his prior complaints of discrimination.

The State contends that it made numerous job offers to Talwar after he was laid off, in accordance with the call-back policy. Talwar counters that the jobs offered were all located more than 30 miles from his house and that, due to a disability, he cannot drive more than 30 miles.[2]

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines

---

1. In his complaint, Talwar claims to have been employed by the State for "more than 21 years." (Pl's Compl. ("Complaint") (Doc. No. 1) at 2.) However, he later states that his employment with the State began in 1990, (Pl's Mem. of Law in Opp. to Def's Mot. for Summ. J. (Doc. No. 28) at 2) and that he was laid off in 2003, *id.* at 3, which is 13 years of employment. This is consistent with the State's assertion that Talwar was employed by

it for 13 years. (Def's Answer and Affirmative Defenses (Doc. No. 15) at 2.)

2. The State admits that it agreed in an earlier settlement with Talwar to offer him jobs within 30 miles of his home in Danbury. However, to the extent that the 30–mile geographic limitation was imposed to accommodate a disability, Talwar has not shown nor even alleged, and the State has denied, that he ever submitted documentation to that effect.

that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922

F.2d 118, 121 (2d.Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

The nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

Finally, "[t]he burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the *prima facie* stage has been characterized as 'minimal' and '*de minimus.*'" *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005) (citations omitted).

## III. *DISCUSSION*

### A. The Title VII Claims

#### 1. The 2003 Layoff

■ An administrative complaint filed with the Equal Employment Opportunity Commission ("EEOC") under Title VII must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, the filing deadline is extended to 300 days in states, such as Connecticut, that have agencies "with authority to grant or seek relief from such practice." *Id.* Accordingly, for the January 2003 layoff to be considered as part of a Title VII claim, Talwar must have filed his EEOC complaint within 300 days. However, Talwar's EEOC complaint was filed on July 19, 2004, so any claim based on the January 2003 layoff was time-barred.

■ Talwar argues that the January 2003 layoff falls under the continuing violation exception and thus is not time-barred.

> Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.

*Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). However, the continuing violation exception does not apply to discrete employment actions, such as the decision to lay off an employee, but rather to "ongoing polic[ies] of discrimination." *See id.* Talwar's effort to characterize an allegedly hostile work environment as an ongoing policy of discrimination that included the 2003 layoff does not satisfy the requirements for application of the continuing violation exception. Therefore, to

the extent that Talwar's claim relies on the 2003 layoff, it is time-barred.[3]

## 2. Title VII Disparate Treatment Claim

 To survive summary judgment in a Title VII case, "[t]he plaintiff must first establish a *prima facie* case by demonstrating that: (1) [she] is a member of a protected class; (2) [her] job performance was satisfactory; (3) [she] suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas v. Green,* 411 U.S. [792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir.2006). "The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the prima facie stage has been characterized as 'minimal' and 'deminimus.'" *Jute v. Hamilton Sunstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005) (citations omitted). "If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action." *Demoret,* 451 F.3d at 151. "If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Id.* at 151.

 In the present case, the first two elements of a *prima facie* case are satisfied. Talwar, a man of Asian ancestry, is a member of a protected class. The defendant does not contest that Talwar's job performance was satisfactory. To satisfy the third and fourth elements of the *prima facie* case, Talwar contends that, after the layoff, the State did not offer him jobs for which he was qualified and instead gave those jobs to less qualified persons.

Talwar does not say so, but it appears that the persons who were given the jobs Talwar claims he deserved were not of Asian ancestry.

In his deposition, Talwar testified to the effect that he was qualified for the positions ultimately given to Quincy Cole, Jeff Lewis, Wayne Stocking, and Angelmina Garcia. However, the defendant has produced evidence that Cole and Lewis had higher reemployment rights than the plaintiff, that the plaintiff was not qualified for the position into which Stocking transferred laterally, and that the plaintiff had no reemployment rights to the position that was given to Garcia. The plaintiff has failed to produce evidence that creates a genuine issue as to any of these points.

Talwar also claims that the job offered to him constituted a demotion. This argument is based on the plaintiff's premise that he should have been classified as an "office assistant" because he performed the duties and had the responsibilities of one, but only had the title and received the salary of a "clerk." However, the plaintiff's union withdrew his reclassification grievance, at a hearing attended by the plaintiff, and the plaintiff's reclassification grievance was never granted. The SBLR dismissed the plaintiff's complaint about the handling of his reclassification grievance.

In response to the State's evidence that its records show that Talwar waived approximately 82 positions after he was laid off in January 2003, Talwar argues that the notifications as to these positions were meaningless because the State knew he could not drive to a job that involved more than a 30–mile commute because of a medical condition. However, Talwar concedes that the State offered him a provisional job as a "Cash Accounting Clerk"—a position

---

**3.** The same analysis applies to the revision of the seniority list, which is not alleged in the Complaint as a basis for the plaintiff's claim, but is relied on by the plaintiff in his memorandum in opposition.

that was actually a higher job classification than Talwar's previous job of "Clerk"— and that the position was in Waterbury, within 30 miles' driving distance of Talwar's home. In order to permanently fill the position of Cash Accounting Clerk, Talwar would have had to pass an exam. Talwar admits that the State unsuccessfully sought to have the position "underfilled" by Talwar, a "Clerk," and then have Talwar promoted to "Cash Accounting Clerk" because of Talwar's concern about passing the exam. Talwar was not willing to take the provisional appointment because he did not want to take the exam.

Therefore, Talwar has failed to meet even his *de minimus* burden for establishing a *prima facie* case of disparate treatment under Title VII.

### 3. Title VII Retaliation Claim

▆ In order to defeat a motion for summary judgment addressed to a claim of retaliation in violation of [Title VII], the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that [he] engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001) (citations omitted).

With regard to the first element of the *prima facie* case, it is undisputed that Talwar filed various complaints of discrimination against the State, an activity protected by Title VII, prior to being laid off in January 2003. Also, the State was certainly aware of the complaints against it, satisfying the second element. The plain-

tiff does not address the retaliation claim in his opposition to the motion for summary judgment. Thus, it appears that he has conceded that the defendant should prevail on that claim. *See Albert v. City of Hartford*, 529 F.Supp.2d 311, 328–29 (D.Conn.2007) (collecting cases). In any event, the record reflects that the defendant should prevail.

The third element of the *prima facie* case is that the employer took adverse action against the plaintiff. The plaintiff has not established the third element of a *prima facie* case. For the reasons discussed above, the plaintiff's retaliation claim cannot be based on the fact that he was laid off in January 2003; nor can it be based on his arguments concerning the change in the seniority list. The retaliation claim could only be based on the plaintiff's contention that the State did not offer him jobs for which he was qualified and instead gave those jobs to less qualified persons. For the reasons discussed above with respect to the plaintiff's disparate treatment claim, he has also failed to establish this element with respect to his retaliation claim.

▆ Nor does the record reflect that the plaintiff could establish the fourth element of the *prima facie* case. The fourth element of the *prima facie* case requires the plaintiff to "present sufficient evidence ... that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Cifra*, 252 F.3d at 216. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir.2003).

Talwar has failed to produce evidence that could establish either.

Because Talwar has failed to satisfy even his *de minimus* burden for establishing a *prima facie* case, the defendant is entitled to summary judgment on the plaintiff's Title VII retaliation claim.

### B. The CFEPA Claims

■ CFEPA claims are evaluated using the same framework as an Title VII claims. *See Brittell v. Dept. of Corr.*, 247 Conn. 148, 164, 717 A.2d 1254, 1264 (1998) ("Although the language of [Title VII] and that of [CFEPA] differ slightly, it is clear that the intent of the legislature . . . was to make the Connecticut statute coextensive with the federal [statute].") Because Talwar has failed to meet his burden with respect to his Title VII claims, he has also failed to meet his burden with respect to his CFEPA claims.

## IV. *CONCLUSION*

For the foregoing reasons, the State of Connecticut's Motion for Summary Judgment (Doc. No. 24) is hereby GRANTED.

The Clerk shall close the case.

It is so ordered.