10-0710-cv
*Bernard v. JP Morgan Chase Bank NA*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of February, two thousand eleven.

PRESENT:

ROBERT D. SACK,
DEBRA ANN LIVINGSTON,
RAYMOND J. LOHIER, JR.,

*Circuit Judges.*

_____

MARILYN BERNARD,

       *Plaintiff-Appellant,*

  v.               No. 10-0710-cv

JP MORGAN CHASE BANK NA,

       *Defendant-Appellee.*

_____

       DAVID G. GABOR, Gabor & Gabor, Garden City, New York, *for Plaintiff-Appellant.*

       ROBERT WHITMAN, Seyfarth Shaw LLP, New York, New York, and Stacey L. Blecher, JP Morgan Chase Legal & Compliance Department, New York, New York, *for Defendant-Appellee.*

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED that the judgment of the district court be AFFIRMED.

Plaintiff-Appellant Marilyn Bernard ("Bernard") appeals from an Opinion and Order of the United States District Court for the Southern District of New York (Katz, *M.J.*) granting Defendant-Appellee JP Morgan Chase Bank NA's ("JPMC") motion for summary judgment. Bernard alleged race and gender discrimination, as well as unlawful retaliation, in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, the New York State Constitution, the New York State Human Rights (Executive) Law § 290 et seq., and the New York City Administrative Code § 8-107. After pre-trial discovery was completed, **[A 3]** JPMC moved for summary judgment. On February 5, 2010, the district court granted JPMC's motion for summary judgment and dismissed the case with prejudice. Bernard timely appealed on February 25, 2010. We assume the parties' familiarity with the underlying facts and procedural history.

We review *de novo* a district court's order granting summary judgment. *Molinari v. Bloomberg*, 564 F.3d 587, 595 (2d Cir. 2009). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (internal quotation marks omitted). The burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists. *Id.* In reviewing a court's decision granting summary judgment, the appellate court must consider "the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006). "Nevertheless, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial."

2

*Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Id.* (internal quotation marks omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact.").

When deciding whether summary judgment should be granted in a discrimination case, we must take additional considerations into account. *Gallo*, 22 F.3d at 1224. "A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Id.* "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* Summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock*, 224 F.3d at 41 (internal quotation marks omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### A. Title VII Discrimination Claims

Under Title VII, an employer may not discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). We examine Title VII disparate treatment claims under the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Feingold v. State of N.Y.*, 366 F.3d 138, 152 (2d Cir. 2004); *Weinstock*, 224 F.3d at 42. Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of racial or gender-based discrimination. 411 U.S. at 802. We have held

3

that the plaintiff's burden of proof at this stage is *de minimis*. *Weinstock*, 224 F.3d at 42. Once he has done so, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. In other words, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted).

Upon the defendant's proffer of such a reason, the presumption of discrimination arising with the *prima facie* case "drops from the picture." *Weinstock*, 224 F.3d at 42 (citing *Hicks*, 509 U.S. at 510-11). The plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Weinstock*, 224 F.3d at 42. The plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons" presented by the defendant were false, and that "more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks and alterations omitted). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Id.* "[I]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Hicks*, 509 U.S. at 519 (emphasis omitted).

On appeal, Bernard argues that she established a *prima facie* case of employment discrimination, and that JPMC's proffered reason for her termination is a pretext for discrimination. JPMC claimed below and maintains on appeal that Bernard was terminated because she failed to meet clearly established sales goals for the fourth fiscal quarter of 2007. Assuming *arguendo* that Bernard has established a *prima facie* case of racial or gender-based discrimination, we agree with

4

the district court that Bernard has not produced sufficient evidence for a reasonable factfinder to conclude that JPMC's proffered reason for terminating Bernard was a mere pretext for unlawful discriminatory intent. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) (citing *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 196 (2d Cir. 2007)). Bernard herself admitted that acquiring new companies was the most important role of a National Account Representative ("NAR"). Nevertheless, Bernard indisputably failed to meet the sales goals set by her superiors for the fourth quarter of 2007. Her Written Warning made clear that she had to acquire five new companies and reacquire five existing clients by December 31, 2007 to continue in her NAR role. Bernard, however, failed to acquire any new companies, as JPMC was unable to confirm acceptance with any of the three companies that Bernard reported as new acquisitions. Moreover, even assuming, as Bernard insists, that she had indeed acquired these three companies, she would still not have met the Written Warning's new acquisition requirement.

Bernard was also well aware of her superiors' growing dissatisfaction with her job performance. As far back as January 2005, Bernard's superior contacted her and expressed his concern with Bernard's efforts in acquiring new companies. Bernard's 2005 performance review, meanwhile, urged Bernard to spend significantly more time acquiring new companies and finding new business opportunities. Bernard's supervisors later issued a verbal warning after she only met 58 percent of her new company acquisition goal in the second quarter of 2007, and was projected to miss her acquisition goal for the third quarter. Bernard was informed multiple times that the problem was her new company acquisition numbers and was expressly given a new company acquisitions target for the remainder of the third quarter. Similarly, the Written Warning required that Bernard meet a particular company acquisition goal, while the Recommendation for Termination relied on the fact that Bernard had failed to meet that goal for the fourth quarter.

In addition, to the extent that there was any "disparate treatment," such treatment made it *easier* for Bernard to remain employed. For the third and fourth quarters of 2007, Bernard's supervisors asked Bernard to meet new company acquisition goals that were *lower* than those of the other NARs. Bernard's own proffered evidence shows that NARs generally had a sales goal of 15 new company acquisitions for the third quarter. It is undisputed, however, that the verbal warning gave Bernard a target of 10 new company acquisitions for the third quarter. Further, while other NARs had a sales goal of 10 new companies in the fourth quarter, Bernard's Written Warning required Bernard to launch only five new companies to continue her participation in the program.

Bernard was not treated differently from similarly situated NARs. Three other Caucasian male NARs also received written warnings in 2007, while the other female member of Bernard's team, as well as a fellow African-American team member, each received favorable reviews for 2007. Moreover, Bernard admitted during her deposition that she never told anyone at JPMC that she felt she was discriminated against because of her race or gender, and that no one at JPMC ever made any remarks indicating a racial or gender-based bias. Bernard also offered no evidence of any instances of discrimination involving any other female NARs, despite the fact that half of them were female at the time.

In sum, Bernard has failed to submit evidence providing any basis on which a reasonable jury could conclude that her termination was the result of discriminatory animus. We therefore find that the district court did not err in granting summary judgment to JPMC on Bernard's racial and gender-based discrimination claims.

### B. Unlawful Retaliation Claim

Bernard next argues that members of JPMC retaliated against her for complaining about her discriminatory treatment. We review Title VII retaliation claims under a three-step burden-shifting

analysis similar to the *McDonnell Douglas* test for disparate treatment. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802-05). As with *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of retaliation by showing: 1) participation in a protected activity; 2) defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. *Id.*; *see also Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

Here, Bernard cannot establish a causal connection between her complaint to JPMC's Human Resources Department and her termination. We have held that, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Bernard on appeal merely lists the sequence of adverse job actions culminating in her termination. Bernard's supervisors, however, gave her their verbal warning in August 2007, and a written warning in October 2007. Bernard did not complain to JPMC's Human Resources Department until December 6, 2007. Further, Bernard herself stated that she felt that her termination "was pretty much set" when she received her verbal warning in August 2007. Pl.'s Dep. at 146:8-18. Since JPMC's adverse employment actions against Bernard began several months before Bernard engaged in any potentially protected activity, Bernard cannot demonstrate a causal connection between them. The district court therefore correctly granted summary judgment to JPMC on Bernard's retaliation claim.

### *C. Conclusion*

We also conclude that the district court properly granted summary judgment to JPMC on Bernard's state and municipal law claims. We have reviewed the parties' remaining arguments and

find them to be moot, waived, or without merit. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). The judgment of the district court is therefore AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk