10-3404-cv
Mavrommatis v. Carey Limousine Westchester et al.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of September, two thousand eleven.

PRESENT:

DEBRA ANN LIVINGSTON,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,

*Circuit Judges.*

_____

PETER MAVROMMATIS,

*Plaintiff-Appellant*,

- v. -                                                         No. 10-3404-cv

CAREY LIMOUSINE WESTCHESTER, INC., d/b/a
COUNTY LIMOUSINE SVC; CAREY LIMOUSINE
STAMFORD, INC.; CAREY INTERNATIONAL, INC.,

*Defendants-Appellees*.

_____

SCOTT R. LUCAS, Lucas Bagnell LLC, Westport, CT, *for Plaintiff-Appellant.*

GUY R. COHEN (David J. Fisher, *on the brief*), Davis & Gilbert LLP, New York, NY, *for Defendants-Appellees.*

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED that the judgment of the district court be AFFIRMED.

Plaintiff-Appellant Peter Mavrommatis ("Mavrommatis") appeals from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*) granting summary judgment to Defendants-Appellees Carey Limousine Westchester, Inc., d/b/a County Limousine Service; Carey Limousine Stamford, Inc.; and Carey International, Inc. (collectively "Carey").[1] Mavrommatis alleged discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and 42 U.S.C. § 1981. Mavrommatis also alleged violations of Connecticut State common law. Carey moved for summary judgment on November 30, 2009, which the district court granted via a Ruling and Order dated July 23, 2010. The district court subsequently entered judgment for Carey and declined to exercise supplemental jurisdiction over Mavrommatis's state law claims. Mavrommatis timely appealed on August 12, 2010. We assume the parties' familiarity with the underlying facts and procedural history.

\* \* \*

"In reviewing a district court's determination of whether it has subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*." *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004). We review *de novo* a district court's order granting summary judgment. *Molinari v. Bloomberg*, 564 F.3d 587, 595 (2d Cir. 2009). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[1] For the purposes of the motion for summary judgment, the parties stipulated to treating all three Defendants-Appellees as Mavrommatis's single "employer."

that the moving party is entitled to a judgment as a matter of law." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (internal quotation marks omitted). The burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists. *Id.* In reviewing a court's decision granting summary judgment, the appellate court must consider "the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006). "Nevertheless, the non[-]moving party must come forward with specific facts showing that there is a genuine issue of material fact for trial." *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Id.* (internal quotation marks omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact.").

When deciding whether summary judgment should be granted in a discrimination case, we must take additional considerations into account. *Gallo*, 22 F.3d at 1224. "A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Id.* "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* Summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock*, 224 F.3d at 41 (internal quotation marks omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). Finally, we are free to affirm a district court's grant of summary judgment "on any ground fairly supported by the record," including "for different reasons than those relied upon by the district court." *Abdu-Brisson*, 239 F.3d at 466.

3

### A. *Mavrommatis's Discrimination Claims*

On appeal, Mavrommatis argues that the district court erred in granting summary judgment to Carey on his discrimination claims because disputed issues of material fact exist over whether he was subject to unlawful discrimination. We examine discrimination claims brought pursuant to Title VII, the ADEA, and § 1981 under the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (Title VII); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (Section 1981); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (ADEA). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. 411 U.S. at 802. We have held that the plaintiff's burden of proof at this stage is *de minimis*. *Weinstock*, 224 F.3d at 42. Once he has done so, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. In other words, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted).

Upon the defendant's proffer of such a reason, the presumption of discrimination arising with the *prima facie* case "drops from the picture." *Weinstock*, 224 F.3d at 42 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 510-11). The plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Weinstock*, 224 F.3d at 42. The plaintiff must produce "sufficient evidence to support a rational finding that the

4

legitimate, non-discriminatory reasons" presented by the defendant were false, and that "more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks and alterations omitted). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Id.* "It is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519 (emphasis omitted).

Here, even assuming *arguendo* that Mavrommatis has established a *prima facie* case of age, nationality, or ethnicity-based discrimination, he has not produced sufficient evidence for a reasonable factfinder to conclude that Carey's proffered reasons for the alleged adverse employment actions comprised a mere pretext for unlawful discriminatory intent. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) (citing *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 196 (2d Cir. 2007)). Mavrommatis's primary evidence in support of his claim that Carey's proffered reasons are pretextual are: 1) Carey's hiring of two General Managers who were in their thirties and "American-born"; and 2) an incident where a co-worker told Mavrommatis to look up the word "subordinate" in his "little black book." J.A. at 637. With respect to the former, Carey submitted evidence that between January 2004 and December 2008, Carey had seven General Managers who were age forty or greater when they assumed the position of General Manager, six of whom were older than Mavrommatis. As for the latter, the district court properly noted that Mavrommatis neither explained how the phrase "black book" is an ethnic slur, nor pointed to evidence suggesting that the term was used as such. He again fails to do so on appeal. In sum, Mavrommatis has failed to submit evidence providing any basis on which a reasonable jury could conclude that he suffered adverse employment actions as a result of discriminatory animus. We therefore find that the district court did not err in granting summary judgment to Carey on Mavrommatis's discrimination claims.

5

***B. Mavrommatis's Unlawful Retaliation Claims***

Mavrommatis next argues that Carey's management unlawfully retaliated against him for complaining about his allegedly discriminatory treatment. We review Title VII, ADEA, and § 1981 retaliation claims under a three-step burden-shifting analysis similar to the *McDonnell Douglas* test for disparate treatment. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802-05) (Title VII); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (Section 1981); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (ADEA). As with *McDonnell Douglas*, the plaintiff's burden of proof as to his *prima facie* case "has been characterized as 'minimal' and '*de minimis*.'" *Jute*, 420 F.3d at 173 (internal quotation marks omitted). Nevertheless, "[t]he ultimate burden of persuasion . . . remains with the plaintiff." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Here, assuming *arguendo* that Mavrommatis has established a *prima facie* case of unlawful retaliation, he cannot establish that Carey's proffered non-retaliatory reasons for its actions are pretextual. We have recently held that, while "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, . . . without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) (emphasis added). "Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact." *Id.* Mavrommatis's sole evidence of pretext other than temporal proximity is his positive performance evaluation in October 2006. That evaluation, however, states that Mavrommatis's "main responsibility" during the evaluation period was "managing the Westchester operation" – not the Stamford operation – and makes clear that while he was "well respected as a leader with the Westchester employees[,] . . . [h]e must gain the

same respect from Stamford/Hartford employees and chauffeurs." J.A. 189-91. Carey, meanwhile, provided evidence showing that Mavrommatis had numerous job performance issues arising from his negative relationships with Carey's Stamford employees. In fact, Mavrommatis himself admitted that he did not have good working relationships with Stamford employees. As a result, Mavrommatis's retaliation claims must fail. The district court therefore did not err in granting summary judgment to Carey on Mavrommatis's retaliation claims.

### C. Mavrommatis's State Law Claims

Mavrommatis finally argues – for the first time on appeal – that he adequately pleaded diversity jurisdiction and that the district court erred in dismissing his state law claims on supplemental jurisdiction grounds. Mavrommatis contends that his civil cover sheet contained sufficient allegations that the requirements of diversity jurisdiction were met. For the following reasons, we reject Mavrommatis's argument.

"Although a plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction, its failure to do so does not always require that the action be dismissed, for 'the actual existence of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements.'" *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (quoting *Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 (2d Cir. 2000)) (internal citation omitted). "Thus, where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may . . . allow a complaint to be amended to assert those necessary facts." *Id.* (ellipsis in original, internal quotation marks omitted). "Or, when the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, we may simply

7

deem the pleadings amended so as to properly allege diversity jurisdiction." *Id.* (internal quotation marks omitted).

Here, Mavrommatis's complaint nowhere alleges diversity jurisdiction and instead alleges solely supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Moreover, Mavrommatis never moved pursuant to 28 U.S.C. § 1653 to amend his complaint to allege diversity jurisdiction. The complaint also fails to allege any amount in controversy, let alone that it exceeds the sum or value of $75,000. *See Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994) ("[T]he party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy."); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." (internal quotation marks omitted)). The district court thus had no occasion to determine over the course of the proceedings that the amount in controversy requirement of diversity jurisdiction was met. *See Jacobs*, 230 F.3d at 568.

Instead, Mavrommatis argues that he adequately alleged diversity of citizenship between the parties and a sufficient amount in controversy in his civil cover sheet. The civil cover sheet, however, states that it "and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court." Special App. 1; *see also Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."). The District of Connecticut's Local Rules, meanwhile, nowhere permit a plaintiff to allege the necessary elements of diversity jurisdiction in the civil cover sheet in lieu of the complaint. *See* D. Conn. L. Civ. R. 3(a)

8

(specifying that all civil complaints must be filed with a Civil Cover Sheet). To the contrary, the Local Rules specify, for example, that "[a] Civil Cover Sheet indicating that a jury trial is desired shall not suffice as a demand for jury trial." *Id.*; *see also Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) (per curiam) (noting that "Local Rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution").

Moreover, to the extent that we have expressed a willingness to permit a plaintiff to rely on a civil cover sheet in lieu of his complaint, we have done so where the plaintiff was proceeding *pro se* or *in forma pauperis*. *See Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996) ("[W]e find that the outcome in [this] case is determined by [the plaintiff's] *in forma pauperis* status."); *Favors*, 877 F.2d at 220 (noting that "*pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *see also* D. Conn. L. Civ. R. 3(a) (noting that "[p]ersons filing civil complaints who are in custody at the time of filing, and persons filing *pro se*" are exempted from the civil cover sheet requirement (emphasis added)). As Mavrommatis is neither proceeding *pro se* or *in forma pauperis*, we find no reason to permit him to rely on his civil cover sheet here. We therefore conclude that the district court properly declined jurisdiction over Mavrommatis's state law claims.

***D. Conclusion***

We have reviewed the parties' remaining arguments and find them to be moot, waived, or without merit. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). The judgment of the district court is therefore AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9