Florence ARNOW, et al., Plaintiffs,

v.

AEROFLOT RUSSIAN AIRLINES, Defendant.

No. 11 Civ. 5460.

United States District Court, S.D. New York.

Sept. 30, 2013.

---

478

Joshua Samuel Carlo Parkhurst, Elizabeth Charney Vladeck, Melissa Sy Chan, Cary Kane LLP, New York, NY, for Plaintiffs.

Val Mandel, Val Mandel, P.C., New York, NY, for Defendant.

### MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge.

In 2009, defendant Aeroflot Russian Airlines ("Aeroflot" or "Defendant") significantly reduced the size of its New York-based workforce. Plaintiffs commenced this lawsuit on August 5, 2011 and amended their complaint on October 21, 2011, alleging that non-managerial employees who were neither Russian nor of Eastern European descent, or who were older, were targeted for termination. (*See* Am. Compl. ¶¶ 13–32, ECF No. 12.) As part of its workforce reduction, Aeroflot terminated a total of nine[1] employees; the five named Plaintiffs in this action were among those who were terminated.

Plaintiffs assert claims for discrimination based on race, national origin and religion pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, race discrimination pursuant to the Civil Rights Act of 1866 ("Civil Rights Act"), 42 U.S.C. § 1981, age discrimination pursuant to the Age Discrimination in Em-

---

1. The Court notes that, as is discussed in Part I, a tenth employee resigned voluntarily but was considered as satisfying one of the required layoffs.

ployment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and claims for discrimination based on race, national origin and age pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8–101 *et seq.*

Defendant moved for summary judgment on October 1, 2012 and submitted declarations from Aeroflot employees Valery Sokolov, Dragan Drobnjak, and Lidieth Zamora, and Defendant's counsel, in support of its motion. (ECF Nos. 20–24.) Plaintiffs opposed the motion on November 21, 2012, and submitted declarations from each of the five named Plaintiffs as well as Plaintiffs' counsel. (ECF Nos. 33–38.) Defendant submitted its reply papers on December 14, 2012, and submitted additional declarations from Sokolov, Drobnjak, Zamora, and Defendant's counsel. (ECF Nos. 44–47.) This case was transferred to the undersigned on May 29, 2013.

The Court notes that this matter has been actively litigated—as is clear from the submissions in support of and in opposition to this motion, there have been a number of depositions taken and documents productions exchanged by the parties. The parties' Statements and Counter–Statements of Undisputed Material Facts, pursuant to Local Rule 56.1, leave no doubt as to the following: Aeroflot did undergo a reduction of workforce in 2009; nine employees, of which Plaintiffs were five, were terminated as part of that reduction; a single individual, Sokolov, the temporary General Director of Aeroflot's New York offices, was the sole decision maker as to which individuals would be terminated; and there is insufficient evidence in the record to show that Sokolov's termination decisions were motivated by prohibited discrimination. In sum, there are no facts that create a triable issue as to whether any of the Plaintiffs were targeted for termination due to their race, national origin, religion, or age.

Plaintiffs' story boils down to the following: Aeroflot is a Russian-based company; when the company downsized, it terminated the five named Plaintiffs (among others); the Plaintiffs are neither Russian nor Eastern European, and were between the ages of 44 and 60; therefore, their terminations must have been the result of discrimination on one or both of these bases. This construct does not a lawsuit make—more is required to survive summary judgment.

For the reasons set forth below, defendant's motion is GRANTED.

## I. FACTS

Defendant's Rule 56.1 Statement of Undisputed Facts (ECF No. 26) ("SOF") and Plaintiffs' Response to Defendant's Rule 56.1 Statement and Plaintiffs' Additional Facts Pursuant to Local Rule 56.1 (ECF No. 39) ("RSOF") are in agreement as to the majority of material facts, and disagreement as to wording and immaterial facts. The following facts are undisputed unless otherwise noted.

Aeroflot is the largest airline in the Russian Federation and is based in Moscow. (SOF ¶¶ 1–2.) Aeroflot has two offices in New York—one in Manhattan and one at John F. Kennedy International Airport. (*Id.* ¶¶ 3, 8.) At the end of 2008, Sokolov became the temporary General Director of the New York offices. (*Id.* ¶ 3.)

In early 2009 Aeroflot established an "anti-crisis" committee to implement austerity and reorganization measures, and Sokolov attended a meeting of that committee in Moscow on January 23, 2009. (*Id.* ¶ 6.) Subsequently, Sokolov was ordered to reduce the headcount of the New York offices from 25 to 19—a reduction of

three positions by May 1, 2009 (Phase I), and another reduction of three positions by September 1, 2009 (Phase II). (*Id.* ¶¶ 7–8.) Later, in June 2009, Aeroflot's Moscow headquarters ordered Sokolov to effect an additional reduction in headcount of the New York offices from 19 to 14 (Phase III). (*Id.* ¶ 9.) Though it is not clear why or how (and it is irrelevant to disposition of this motion), it is undisputed that Sokolov was ultimately able to limit the Phase III reduction to 15 instead of 14. (*Id.* ¶ 40; RSOF ¶ 40.)

Sokolov satisfied the Phase I layoffs first by treating the resignation of Elena Malysheva, who worked in the Aeroflot frequent flyer program department, in December 2008 as a layoff, and then by laying off two of the five call center employees—Luba Katz and Plaintiff Florence Arnow. (SOF ¶¶ 11–12, 24.) No new employee was hired to replace Malysheva, though her duties were transferred to other remaining employees. (SOF ¶¶ 11, 13; RSOF ¶ 11.) As for the call center, Defendant asserts that Sokolov was aware that Aeroflot was opening a remote international call center in Russia to be staffed by approximately 200 employees; Plaintiffs argue that it is unclear when Sokolov became aware of this fact. (SOF ¶ 20; RSOF ¶ 20.) No employee of Hispanic origin was affected by this round of layoffs; Katz was of Russian origin, while Arnow was of neither Hispanic nor Russian origin. (SOF ¶ 29.)

Sokolov satisfied the Phase II layoffs first by eliminating the administrative assistant position held by Plaintiff Margarita Hartoularos. (*Id.* ¶ 30.) The tasks which Hartoularos performed were either automated or distributed among remaining employees in the New York offices. (*Id.*

¶¶ 31–36.) Sokolov also laid off Guzal Sharipova, the equivalent of a call center employee at John F. Kennedy Airport and Plaintiff Ana Haith, a call center employee in New York. (*Id.* ¶ 37.) Sharipova and Haith had the least seniority among all employees in the New York offices. (*Id.* ¶ 38.) Following this phase of layoffs, two employees of Hispanic origin, two employees of Russian origin, and one employee who is neither Russian nor Hispanic were affected by the 2009 workforce reductions. (*Id.* ¶ 39.)

Finally, Sokolov satisfied the Phase III layoffs by closing the New York call center entirely (laying off remaining employees Nataliya Samuylova and Plaintiff Blanca Melgar), the New York Airline Reporting Corporation Department (laying off supervisor plaintiff Silvana Rodriguez), and by laying off a member of the finance department named Tamara Belova. (*Id.* ¶¶ 41, 43, 46, 48, 50, 55; RSOF ¶ 55; Sokolov Tr. 205:22–207:9, ECF No. 33–1.) Of the six reservation agents who were laid off (the five call center employees plus the employee based at John F. Kennedy Airport, three were of Russian origin (Samuylova, Katz, and Sharipova), two were Hispanic (Haith and Melgar), and one was neither Russian nor Hispanic (Arnow). (SOF ¶ 45.) Rodriguez was let go because, in March 2009, Aeroflot eliminated the New York Airline Reporting Corporation Department and transferred many (but not all) of the functions performed in New York to Moscow. (SOF ¶¶ 48–55.)

In total, of the nine individuals who were let go from Aeroflot in 2009, four were of Russian or Eastern European origin, four were of Hispanic origin, and one was of neither Russian, Eastern European, nor Hispanic origin.[2] (*Id.* ¶¶ 11–12, 29, 30, 37,

---

**2.** The Court notes that Plaintiff Arnow is of Jewish–American heritage and French ethnic-

ity. (RSOF ¶ 86.)

39, 43–45, 50, 55; RSOF ¶ 55.) The average age of the employees in Aeroflot's Manhattan office before the 2009 layoffs was 46.5; after the layoffs, the average age of the remaining employees was 42.1, and the average age of the laid off employees was 51.9. (Pl.'s Opp. at 13, ECF No. 40.)

## II. STANDARD ON SUMMARY JUDGMENT

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir. 2010).

 Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed.R.Civ.P. 56(e); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir.2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010) (citations omitted). In addition, self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and to defeat a motion for summary judgment. *See BellSouth Telecommunications, Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir.1996).

Summary judgment is equally appropriate in actions alleging employment discrimination as in other types of cases. *See Abdu–Brisson v. Delta Air Lines,* 239 F.3d 456, 466 (2d Cir.2001); *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997). In a discrimination action, the Court must examine the record as a whole and decide whether a plaintiff can satisfy his or her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him or her]." *E.g., Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000) (internal quotation marks omitted).

## III. DISCUSSION

Plaintiffs assert four sets of claims—(A) Title VII discrimination claims based on race, national origin, and religion; (B) Civil Rights Act race discrimination claims; (C) ADEA age discrimination claims; and (D) NYHRL and NYCHRL discrimination claims based on race, national origin, and age. Even assuming Plaintiffs are able to make out a *prima facie* case of discrimination for any one of these claims,[3] summary judgment for Defendant is still appropriate as to all claims because Defendant has proffered legitimate business reasons for the 2009 layoffs and Plaintiffs have failed to demonstrate that those reasons are pretextual.

---

**3.** The Court does not believe a *prima facie* case has been established as to the fourth element of the *McDonnell Douglas* burden-shifting framework described *infra,* but is willing to assume a *prima facie* case on this motion.

## A. *Title VII Claims*

 Plaintiffs' Title VII discrimination claims are evaluated under the three-step burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Cuttler v. Fried, Frank, Harris, Shriver and Jacobson, LLP,* No. 10 Civ. 296, 2012 WL 1003511, at *4 (S.D.N.Y. Mar. 23, 2012). This analysis requires each Plaintiff to show that she is a member of a protected class; that she performed her job satisfactorily; that she suffered an adverse employment action; and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. 792 at 801, 93 S.Ct. 1817; *Stratton v. Dep't for Aging for N.Y.C.,* 132 F.3d 869, 879 (2d Cir.1997). When a plaintiff can demonstrate these elements, a rebuttable presumption of discrimination is raised. *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir.2001). The defendant then bears the burden of putting forward legitimate, non-discriminatory reasons for the alleged adverse employment action. *Id.* Once the defendant has carried this burden of production, the presumption of discrimination disappears. *Id.* A plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason for the alleged adverse employment action was pretext for prohibited discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 499 (2d Cir.2009).

██ In alleging Title VII violations, Plaintiffs assert that, as a result of the fact that they are neither Russian nor Eastern European,[4] Defendant targeted them for termination during the 2009 layoffs. (Am. Compl. ¶¶ 18, 26, 32.) Even assuming Plaintiffs are able to establish a *prima facie* case of discrimination under Title VII on this basis, the Court finds that Defendant has proffered a legitimate nondiscriminatory reason for the layoffs and Plaintiffs have not provided sufficient evidence of pretext. It is undisputed that the New York offices of Aeroflot were ordered to dramatically reduce their workforce in 2009, from 25 down to 14, by corporate headquarters in Moscow, after Sokolov attended a meeting of an "anti-crisis" committee in Moscow in late January 2009. (SOF ¶¶ 6–9.) It is also undisputed that Sokolov was charged with determining how to implement these layoffs. (SOF ¶¶ 7–9; RSOF ¶ 143.) "It is well-settled in the Second Circuit that a reduction in force in response to economic and budgetary concerns constitutes a legitimate, non-discriminatory employment action [in the context of the *McDonnell Douglas* burden-shifting framework]." *Garcia v. Henry Street Settlement,* 501 F.Supp.2d 531, 540 (S.D.N.Y.2007) (citing cases). Further, the law is clear that courts should not second-guess an employer's reasonable business judgment regarding personnel matters. *See, e.g., Fleming v. MaxMara USA, Inc.,* 371 Fed.Appx. 115, 118 (2d Cir.2010); *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988). The Court finds that the 2009 layoffs with which Sokolov was tasked constituted legitimate,

---

4. The Court notes that Plaintiffs also reference Title VII discrimination on the basis of religion in their Complaint. (Am. Compl. ¶ 34.) Beyond the fact that Plaintiff Arnow is of "Jewish heritage" (RSOF ¶ 86), Plaintiffs have offered no evidence of religious discrimination whatsoever and, as such, have not made even the minimal showing of an inference of discriminatory intent required for a *prima facie* case under the *McDonnell Douglas* burden-shifting framework.

non-discriminatory reasons for laying off the Plaintiffs (and others) at that time.

"Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." *Fleming,* 371 Fed.Appx. at 118. Plaintiffs have not put forward sufficient evidence to show that Sokolov's selection of the individuals to be terminated as part of the 2009 layoffs was a pretext for discrimination on the basis of race or national origin. Though Plaintiffs offer 182 "Additional Facts" with their opposition submission to this motion, they fail to provide sufficient evidence of pretext. Instead, the record shows that, of the nine individuals who were laid off in 2009, four were of either Russian or Eastern European descent while the five Plaintiffs were neither. *See e.g., Bernard v. JP Morgan Chase Bank NA,* 408 Fed.Appx. 465, 468 (2d Cir.2011) (finding lack of pretext where members inside and outside the protected class suffered the same adverse employment action). The record also shows that none of the fired employees were directly replaced; Sokolov eliminated an entire five-person department (the call center), automated certain tasks, outsourced certain tasks to the Moscow headquarters to gain efficiencies, and re-distributed less time-consuming tasks among the remaining workforce. At a branch of a company that is required to trim its workforce by roughly 40% in a matter of months, these are unfortunate but unavoidable facts of life.

Instead, conclusory allegations, conjecture and speculation—none of which can create a genuine issue of fact—make up much of what Plaintiffs have put forth in support of their pretext arguments. The Court finds the various rumors and inferences about Sokolov's preference for Russians over non-Russians by the Plaintiffs, in situations unrelated to the layoffs, unavailing. (RSOF ¶¶ 214, 220–227.) Similarly, the Court finds Plaintiffs' attempts to generate an adoptive admission from Sokolov over a purported conversation with Zamora, the Human Resources Manager and not a Plaintiff in this action, in which Zamora asked about a rumor concerning the impact of the impending layoffs on Hispanics, unpersuasive; it provides insufficient indicia of reliability as to Sokolov's intent in determining who to lay off. (RSOF ¶ 240.) Further, the fact that Zamora, not Sokolov, is alleged to have told two of the Plaintiffs that they should seek legal counsel in connection with their terminations, and that Zamora herself also is alleged to have sought legal advice (RSOF ¶ 242), does not bear on Sokolov's decision making process as to who to lay off.[5] Finally, the Court also finds Plaintiffs' allegations that Sokolov treated Zamora "roughly," or that he was rude to others (*see, e.g.,* RSOF ¶¶ 230, 232, 243), insufficient to establish pretext—Title VII does not establish a general civility code for the workplace. *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir.2010).

The allegations that come closest to a showing of pretext are those that invoke Sokolov's own words. Plaintiffs allege that Sokolov stated to someone, who then told someone else (double hearsay), that he would "exile" all non-Russian employees. (RSOF ¶ 244.) However, there is nothing in the record on this motion that suggests that this comment—even in its hearsay form—was made at a time and in a manner to suggest that Sokolov was describing his motivations for whom to lay off in connection with the 2009 layoffs. *See Tomassi v. Insignia Fin. Grp.,* 478 F.3d 111,

---

**5.** This is especially true in light of the fact that Zamora was "not included in any of Sokolov's decision-making regarding the layoffs." (RSOF ¶ 154.)

116 (2d Cir.2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decisionmaker was motivated by assumptions or attitudes relating to the protected class.")

Plaintiffs also assert that Sokolov told Plaintiff Melgar that she was being fired because he received orders from Moscow to fire her because she did not speak Russian. (RSOF ¶ 238.) This is consistent with the allegations in the Amended Complaint. (Am. Compl. ¶ 29.) At her deposition, Melgar testified that she asked Sokolov two questions about the reasons for her termination in succession—"[i]t's because I'm not Russian?" and "[i]t's because I don't speak Russian?"—to which Sokolov answered with a single "yes." (Parkhurst Decl. Ex. 7 at 27, ECF No. 33.) A few questions later, Plaintiffs' counsel clarified with Melgar that it was her understanding that she was fired because Sokolov was acting pursuant to instructions from Moscow telling him to fire her because she did not *speak* Russian. (*Id.* at 28.) The Court cannot engage in speculation or conjecture as to whether, even viewing Melgar's factual allegations in the light most favorable to her, Sokolov told her she was being fired because she was not of Russian origin. Assuming Sokolov did state that Melgar was fired because she did not *speak* Russian, this does not create a triable issue as to pretext on the basis of *national origin* for a rational juror to decide. Nothing in the record suggests that someone of Melgar's age, ethnic background, religious background, or national origin could not speak Russian—there are certainly numerous non-Russians who do. Lack of language skills is insufficient to rebut Defendant's legitimate business reason for the layoffs, where Melgar was part of an entire department—the five-person call center, made up of both Russians and non-Russians—that was eliminated. The Court finds that Melgar's allegations alone are insufficient to establish pretext and to avoid summary judgment.

The Court finds that Plaintiffs have failed to present sufficient evidence that Defendant's business reasons for the selection of the individuals to be included in the 2009 layoffs at Aeroflot's New York offices were merely pretext for discrimination on the basis of race or national origin. Accordingly, summary judgment is appropriate for Defendant on Plaintiffs' Title VII claims.

### B. *Civil Rights Act Claims*

Courts in this Circuit apply the *McDonnell Douglas* burden-shifting framework described above to employment discrimination claims brought under the Civil Rights Act as well. *E.g., Mavrommatis v. Carey Limousine Westchester, Inc.,* 476 Fed.Appx. 462, 465 (2d Cir.2011). For the reasons set forth above, because Plaintiffs have failed to provide sufficient admissible evidence to show that the legitimate, nondiscriminatory reasons for terminating Plaintiffs were pretextual, summary judgment is also appropriate for Defendant on Plaintiffs' Civil Rights Act claims for racial discrimination.

### C. *ADEA Claims*

Even after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), courts in this Circuit apply the *McDonnell Douglas* burden-shifting framework to ADEA claims. *E.g., Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir.2010) ("[W]e remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit.").

The Court notes that Plaintiffs' allegations concerning the average age of

the employees who were let go, when compared to the remaining employees (*see* Pl.'s Opp. at 13, ECF No. 40), may be sufficient for the minimal showing required to establish an inference of discriminatory intent for a *prima facie* case. Nevertheless, Plaintiffs' ADEA claims fail because they have not provided sufficient admissible evidence to show that the reasons proffered for the terminations of any of the Plaintiffs was pretext for age discrimination. The only evidence in the record of statements by Sokolov concerning age are his statements during his depositions that he was, in substance, able to perceive the relative ages of employees based on their physical appearance. (RSOF ¶¶ 193, 203.) This observational ability—one that we all have—is insufficient to create a triable issue of fact as to pretext for the purposes of a discrimination claim under the ADEA.[6] Plaintiffs have failed to offer any evidence that they were subjected to any age-related comments or criticisms on the job, or that such comments precipitated or followed their layoffs. *See, e.g., Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir.2000) (finding summary judgment appropriate where there was a lack of evidence that plaintiff was subjected to discriminatory comments or criticisms on the job). Plaintiffs have not offered evidence to raise a triable issue as to whether their layoffs were pretextual under the ADEA, and thus summary judgment is appropriate for Defendant on these claims as well.

### D. *NYHRL and NYCHRL Claims*

 Courts in this Circuit also analyze NYSHRL and NYCHRL discrimination claims under the *McDonnell Douglas* burden-shifting framework described above. *E.g., Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.2010); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) ("New York courts examine claims under those statutes with the same analytical lens as corresponding Title VII-based claims."). Further, while claims "brought under [NYSHRL] are analytically identical to claims brought under Title VII," *Torres v. Pisano*, 116 F.3d 625, 629 n. 1 (2d Cir.1997), "claims under the [NYCHRL] must be reviewed independently from and more liberally than their federal and state counterparts," *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (internal quotations omitted).

 For all the reasons set forth above, however, even under a more liberal NYCHRL review, plaintiffs cannot survive summary judgment on either their state or local discrimination claims. *See generally Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 78–79, 872 N.Y.S.2d 27 (N.Y.App.Div.2009) (instructing that under the NYCHRL, a plaintiff must still raise a triable issue of fact "that she has been treated less well than other employees because of her gender," and that the "broader purposes of the [statute] do not connote an intention that the law operate as a 'general civility code'"). Courts also note that "the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Julius v. Dep't of Human Res. Admin.*, No. 08 Civ. 3091, 2010 WL 1253163, at *5 (S.D.N.Y. Mar. 24, 2010) (internal quotations omitted). Reviewing the undisputed facts in the light most favorable to plaintiffs, as set forth above, there is no support

---

6. The Court further notes that the record reflects that it was Belova, not Sokolov, who stated that "old people have to leave" in connection with her own departure. (RSOF ¶ 202.) The Court finds this statement by Belova, a non-decision maker in the layoff process at Aeroflot, insufficient to establish pretext by Sokolov in his layoff decisions.

for a different outcome for any of the Plaintiffs as to their discrimination claims under the NYCHRL because they have failed to put forth sufficient evidence of pretext. Accordingly, summary judgment for Defendant is also appropriate for Plaintiffs' NYSHRL and NYCHRL discrimination claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 20, to adjourn all dates and deadlines, and to terminate this action.

SO ORDERED.